# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DONALD L. BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV626 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Donald L. Bailey, brought this action pursuant to Sections 205(g) and

1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and

1383(c)(3)), to obtain review of a final decision of the Commissioner of Social Security denying

his claims for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and

Supplemental Security Income ("SSI") under Title II and Title XVI of the Act.[1]  The Court

has before it the certified administrative record and cross-motions for judgment.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff filed an application for SSI benefits on February 7, 2000 and an application for a POD and DIB on February 28, 2000, both alleging a disability onset date of June 15, 1995. (Tr. 19, 71-77, 378-90.)[2] The applications were denied initially and upon reconsideration. (*Id.* at 28-38, 391-95.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 39.) Because he was incarcerated, Plaintiff did not attend the scheduled hearing. (*Id.* at 19.) A second hearing was held on June 19, 2003; Plaintiff and his attorney were present and Plaintiff testified. (*Id.* at 399-429.) On August 4, 2003, the ALJ rendered a decision partially favorable for Plaintiff, concluding that he was not entitled to Title II benefits, but he was disabled beginning on May 30, 2002 for purposes of his Title XVI claim. (*Id.* at 19-26.) The Appeals Council's November 4, 2005 denial of Plaintiff's request for further review made the ALJ's determination the final decision for purposes of review. (*Id.* at 7-12.)

Plaintiff then sought review with this court, which remanded the case to the Appeals Council for further action on May 23, 2007. (*Id.* at 479, 525-27.) The Appeals Council remanded the matter to the ALJ, who held a hearing on January 10, 2008. (*Id.* at 521-23.) Present at this hearing were Plaintiff, his attorney, a vocational expert ("VE"), and a medical expert. (*Id.* at 595.) The ALJ determined that Plaintiff was not disabled under the Act from April 29, 2000 through May 30, 2001, which is the period at issue in the instant action.[3] (*Id.* at

---

[2] Transcript citations refer to the administrative record.

[3] Plaintiff testified that he was incarcerated from 1995 through April 28, 2000 and returned to jail on May 31 2001. (Tr. 459, 601-02.) The period in question for purposes of this action, April 29, 2000 through May 30, 2001, is the time period between these two stints in prison.

2

452-68.)  The Appeals Council's July 12, 2010 denial of Plaintiff's request for further review made the ALJ's determination the Commissioner's final decision.  (*Id.* at 430-32.)

## II. FACTUAL BACKGROUND

Plaintiff was born August 17, 1958, has a high school education, and his past relevant work was as a receiver unloading trucks.  (*Id.* at 466).

## III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act.  Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow.  *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986).  This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 497, 599 (4th Cir. 1979)).  The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345.  In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute

3

its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson*, 402 U.S. at 401. The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).[5] To meet this definition, a claimant must have a severe impairment which makes it impossible to

---

[4] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423 (d)(3), 1382c(a)(3)(D).

[5] The statutes and regulations applicable to disability determinations for DIB and SSI are generally the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

4

do previous work or any other substantial gainful activity[6] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

## A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520, 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1)    Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2)    Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3)    Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4)    Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

---

[6] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

(5)     Whether the claimant is able to perform any other work considering both his residual functional capacity[7] and his vocational abilities.  If so, the claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920.

Here, the ALJ reached the fifth step of the sequence, at which point he determined that Plaintiff was not disabled during the period in question, April 29, 2000 through May 30, 2001. (Tr. 467.)  The ALJ first determined that Plaintiff had not engaged in substantial gainful activity during the period in question. (*Id.* at 455.)  The ALJ next found in step two that Plaintiff had severe impairments:  generalized anxiety disorder, depression, and status post spinal surgery. (*Id.*)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 456.)  At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. (*Id.* at 466.)

## B.  Residual Functional Capacity Determination

Prior to steps four and five, the ALJ determined Plaintiff's RFC based on his evaluation of the evidence, including Plaintiff's testimony and the findings of treating and examining health care providers. (*Id.* at 457-66.)  Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform light and sedentary work. (*Id.* at 457.)  Plaintiff

---

[7] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptom (*e.g.*, pain).  *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

6

was also limited to performing unskilled, simple, routine, repetitive work, dealing with things, and with limited contact with others. (*Id.*) Plaintiff was further limited to a low stress environment, limited stooping and crouching, and a sit/stand option. (*Id.*) In setting Plaintiff's RFC, the ALJ considered the entire record and concluded that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (*Id.* at 459.)

More specifically, in assessing Plaintiff's mental functional capacity the ALJ gave "the most weight" to the testimony and opinion of Dr. Robert Ballantyne, a licensed clinical psychologist who testified at Plaintiff's hearing. (*Id.* at 464.) The ALJ also gave "significant weight" to the opinion of Dr. Marilyn Ward, a treating psychiatrist, in finding that Plaintiff's generalized anxiety disorder was a severe impairment. (*Id.* at 461.) However, the ALJ gave little weight to Dr. Ward's conclusions that Plaintiff had certain marked limitations, because these conclusions were inconsistent with other evidence in the record and inconsistent with her own treatment notes. (*Id.* at 461.) The ALJ gave "more weight" to the opinion of the psychiatrist who completed Plaintiff's prison discharge summary in January 2000. (*Id.* at 462.) Specifically, the ALJ gave "substantial weight" to that psychiatrist's conclusions regarding Plaintiff's diagnosis, response to treatment, and ongoing symptoms. (*Id.* at 462-63.) And the ALJ gave "less weight" to the psychiatrist's vocational recommendations because they appeared based on "non-medical factors including [Plaintiff's] failure to complete high school and his history of drug abuse and pedophilia." (*Id.* at 462.)

7

The ALJ gave "substantial weight" to the opinion of consultative psychologist Dr. Dennis Noia, who examined Plaintiff in May 2000. (*Id.* at 463.) The ALJ gave "some weight" to the specific functional limitations of Dr. Charles Spencer, but gave no weight to a "check mark" on his May 2002 psychiatric report indicating that Plaintiff was incapable of performing any work activity. (*Id.* at 463.) In so concluding, the ALJ noted in part that Plaintiff did not begin treatment with Dr. Spencer until May 2002, shortly after his re-release from prison and a year after the period in question. (*Id.*) The ALJ also gave "little weight" to the May 2003 opinion of treating psychologist Mary Jeannette, because it was internally inconsistent and did not give any basis for the proposed limitations other than the diagnosis of a generalized anxiety disorder. (*Id.* at 464.) The ALJ also gave "less weight" to the opinions of the State agency medical consultants who made the initial and reconsideration determinations in 2000, during the period in question, because they did not have the benefit of all the evidence. (*Id.* at 465.) The ALJ also considered recent evidence of Plaintiff's treatment for pain and a psychological evaluation submitted for the supplemental hearing, but gave them "little weight" in view of the limited time period in question. (*Id.*)

In regards to Plaintiff's physical impairments, the ALJ gave "substantial weight" to the opinion of Dr. Myra Shayevitz, a consultative physician, and "some weight" to the opinion of Christine Atkins, a nurse practitioner. (*Id.*) However, the ALJ gave no weight to the assessment of Dr. Mulaken Frew, a treating physician, because his proposed limitations were inconsistent with Plaintiff's own statements regarding his abilities and activities of daily living as well as with Dr. Frew's own treatment notes and other evidence in the record. (*Id.*) Last,

8

the ALJ further gave the State agency medical consultants who considered Plaintiff's exertional limitations "substantial weight." (*Id.* at 465-66.)

## C. Past Relevant Work

The ALJ found in step four that Plaintiff was not capable of performing his past relevant work as a receiver unloading trucks and lifting items weighting fifty pounds. (*Id.* at 466.)

## D. Adjustment to Other Work

The claimant bears the initial burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512, 416.202-03; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). Once the claimant has established at step four that he cannot do any work he has done in the past because of his severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with his RFC, age, education and past work experience. *Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980). Here, the ALJ found that given Plaintiff's age, education, work experience, and RFC, there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 466.)

## V. ANALYSIS

Plaintiff raises five issues. First, he contends that the ALJ failed to accord proper weight to the medical opinion of his treating physician. (Docket Entry 9 at 3.) Second, he argues that the ALJ erred in assessing the impact of his mental limitations. (*Id.* at 7.) Third, Plaintiff asserts that the Appeals Council erred by failing to grant his request for review. (*Id.*

9

at 10.)  Fourth, he contends the ALJ failed to properly adhere to Social Security Ruling ("SSR") 83-12 in relying on VE testimony.  (*Id.* at 12.)  Last, Plaintiff argues that the ALJ violated SSR 86-8 by relying on speculative reasoning rather than the evidence of record.  (*Id.* at 14.)  As explained below, these arguments lack merit.

## A. The ALJ Did Not Err in His Application of the Treating Physician Rule.

Plaintiff faults the ALJ for giving treating physician Dr. Marilyn Ward's medical opinion "little weight."  (Docket Entry 9 at 5.)  In support, Plaintiff points to symptoms noted by Dr. Ward, including increased suicidal thoughts, sleep deficits, psychomotor restlessness in hands and feet, racing thoughts, periods of obsessive ruminative thoughts, and diminished appetite.  (*Id.* citing Tr. 334-77 and 397-98).

The "treating physician rule," 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) generally provides more weight to the opinion of a treating source, because it may "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).[8]  But not all treating sources are created equal. [9]  An ALJ refusing to accord controlling weight to the

---

[8] Effective March 26, 2012, a regulatory change renumbered, but did not impact the substantive language of, the treating physician rule.  77 Fed. Reg. 10651-10657 (Feb. 23, 2012).  Given that all material events in this action precede this nominal regulatory change, this Opinion and Recommendation will make use of the pre-March 26, 2012 citations when referencing the treating physician rule.

[9] SSR 96–2p provides that "Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques."  SSR 96-2p, *Titles II and XVI: Giving Controlling Weight to Treating Sources Medical Opinions.*  However, where "a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight."  *Id.*  SSR 96-5p provides further that "treating source opinions on issues reserved to the Commissioner are never

10

medical opinion of a treating physician must consider various "factors" to determine how much weight to give it. *Id.* §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6). These factors include: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id.*

Significantly, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, must be both well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. *Id.* §§ 404.1527(d)(2)-(4), 416.927(d)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *accord Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act never receive controlling weight because the decision on that issue remains for the Commissioner alone. 20 C.F.R. §§ 404.1527(e), 416.927(e).

In his decision, the ALJ stated that "In assessing the claimant's mental functional limitations during the period in question, I have given the most weight to the opinion of the medical expert. As discussed below, I have given little weight to the opinion of Dr. Ward."

entitled to controlling weight or special significance." SSR 96-5p, *Medical Source Opinions on Issues Reserved to the Commissioner.* However, "opinions from any medical source about issues reserved to the Commissioner must never be ignored, and . . . the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)." *Id.*

(Tr. 456.)   Later, the ALJ assessed Dr. Ward's medical opinion at considerable length:

> Dr. Marilyn Ward, a psychiatrist, treated the claimant in 2000.   Dr. Sabita Ashutosh completed a medical report for Dr. Ward in August 2000 which showed that the claimant had been given a principal diagnosis of generalized anxiety disorder and also had alcohol dependence in full remission, that his response to treatment was fair and his progress was guarded, that his concentration level was poor, that he had an extremely limited stress tolerance which would lead to conflict with his supervisors, that under duress he would physically leave a job site without explanation, that his anxiety caused problems in his memory and completion of job tasks as the level of complexity increased, and that he could sustain only short superficial social interactions before he would get up and leave the area (Exhibit 4F).   Dr. Ward completed a medical source statement in 2004 which showed marked limitations in the claimant's ability to carry out detailed instructions, make judgments on simple work related decisions, interact appropriately with the public, and respond appropriately to work pressures and changes in a routine work setting.   She wrote that the claimant was highly anxious, that his anxiety worsened with expectations or around others, and that he was shaky and anxious during routine appointments.   She wrote at that time that she had treated the claimant from May 8, 2000, through June 8, 2001, but had last seen him in October 2000 (Exhibit 21F). . . . .
>
> In finding the claimant's generalized anxiety disorder is a "severe" impairment, I have given significant weight to the medical opinion of Dr. Ward.   However, I have given little weight to her statements regarding marked limitations because they are inconsistent with the other evidence in the record and are non consistent with her own treatment notes.   Dr. Ward did not provide any clinical findings to support her assessment or explain the basis for her opinion that these limitations applied to a period of three years previously and after the claimant's last visit.   The statement regarding the claimant's leaving a job site under duress appears to be based on the claimant's subjective allegations.   There is no evidence in the prison medical records which support this, and the claimant's work history shows that he worked for several years for the same company (Exhibits 1F, 2E, 9E).   He wrote on his disability report that he stopped working

12

due to his arrest and imprisonment, rather than due to his medical condition (Exhibit 1E). Dr. Ward observed that the claimant was very anxious at the time of his visit in May 2000, shortly after his release from prison, but she noted that he was fully oriented and his cognition appeared grossly intact. Dr. Ward's opinion regarding marked limitations is also unsupported. She relied on the claimant's subjective statements, which were inconsistent with his earlier statements and the other evidence in the record. For example, her treatment notes show that the claimant told her that he had become so anxious that he had a heart attack and was hospitalized for a week in November 1999, which is inconsistent with the hospital records which show that his chest pain was assessed as non-cardiac and caused by his hiatal hernia (Exhibits 4F, 3F). The subsequent therapy records show that the claimant's symptoms were generally controlled on medication. He told Dr. Ward in August 2000 that taking 80mg of Buspar helped his back pain as well as his anxiety, that he felt quite isolated but was generally doing as well as could be expected, that his suicidal ideas were chronic and stable, that his sleep and appetite were okay, that he had no side effects from his medication, and that he was participating in a chemical dependency program and was waiting for a sex offender program. Dr. Ward observed that he appeared anxious and hyperactive but was adequately groomed with good eye contact, that his speech was coherent and relevant, and that his affect was not overtly depressed. When the claimant returned to Dr. Ward in October 2000, he reported increasing depression and difficulty sleeping. Dr. Ward increased his dosages of Prozac and prescribed Trazodone to help him sleep. The claimant reported at his next visit that he was feeling better. The records of his therapists show that his mental condition was generally stable. Dr. Ward increased the claimant's dosages of medication as needed but never referred the claimant for more intensive treatment or hospitalization. Her treatment notes are not consistent with the marked limitations given in her medical report (Exhibit 20F).

(TR. 461-62.)

Having thoroughly reviewed the record, the undersigned concludes that the ALJ's

13

decision to partially discount Dr. Ward's opinion is legally correct and supported by substantial evidence. As the ALJ pointed out, and as noted in Defendant's memorandum (Docket Entry 12 at 6-7), Dr. Ward's 2004 report indicated she "treated" him from May 2000 through June 2001, but last actually "saw" Plaintiff in October 2000 (Tr. 398). Also, Dr. Ward's conclusion that Plaintiff displayed marked limitations was not supported by tests or clinical findings and, as demonstrated below, was not consistent with evidence that was in the record. *See Roberts v. Astrue*, 1:11–cv–00236–MR, 2013 WL 663306, *6 (W.D.N.C. Feb. 22, 2013) (concluding that "an opinion of a treating physician is not entitled to controlling weight if it is unsupported by medically acceptable clinical and laboratory diagnostic techniques and/or inconsistent with other substantial evidence of record") (citing 20 C.F.R. § 404.1527(c)(2)).[10]

Moreover, a number of Dr. Ward's conclusions appear based on Plaintiff's self-reporting; not medical observations. For example, Dr. Ward credited Plaintiff's explanation that he could not work due to his psychological problems, but Plaintiff reported that he stopped working because he was incarcerated. (Tr. 86, 108.) The record also demonstrates that Plaintiff had previously worked for a number of years for a single employer (*id.* at 124) and that he worked part-time while in prison until his release in April of 2000 (*id.* at 602, 606). Likewise, the record shows that Plaintiff did not have a heart attack, as he contended to Dr. Ward and which she apparently credited, but instead displayed chest

---

[10] Plaintiff asserts too that the ALJ ignored the fact that Dr. Ward treated him during the time in question. (Docket Entry 9 at 5). It is true Dr. Ward treated Plaintiff during the time in question. (*See, e.g.*, Tr. 340, 349.) Nevertheless, these treatment notes do not establish that Plaintiff is disabled under the Act or more limited than set forth in the ALJ's RFC, nor do they establish that the ALJ erred in attributing little weight to Dr. Ward's opinion that Plaintiff had certain marked limitations.

14

discomfort resulting from a hiatal hernia. (*Id.* at 192.) Additionally, treatment notes from other therapists do not support the contention that Plaintiff was unable to perform simple, routine, repetitive tasks in a low stress work environment (*id.* at 338-377) and the record demonstrates that Plaintiff's anxiety and depression were treated and that he had no current complaints as of March 2001 (*id.* at 323) and that his symptoms were well-controlled with medication around that time (*id.* at 328). In short, substantial evidence supports the ALJ's treatment of Dr. Ward's medical opinion.

### B. The ALJ Did Not Err in Assessing the Impact of Plaintiff's Mental Limitations.

Plaintiff next argues that the ALJ erred in assessing the impact of his anxiety and depression in performing unskilled work. (Docket Entry 9 at 7.) In support, Plaintiff points to SSR 85-15, *Capability to Do Other Work—The Medical Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments*, which provides that:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

SSR 85-15.

Plaintiff points further to a list, found in the Social Security Administration's Program Operations Manual System, of fourteen attributes required to do unskilled work. *See* POMS

15

DI25020.010B3. https://secure.ssa.gov/poms.nsf/lnx/042502001.[11] Plaintiff rounds out his argument by quoting SSR 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, as follows:

> Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.
>
> . . . .
>
> Medical opinions from treating sources about the nature and severity of an individual's impairment(s) are entitled to special significance and may be entitled to controlling weight. If a treating source's medical opinion on an issue of the nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the adjudicator must give it controlling weight.

SSR 96-8p.

In essence, Plaintiff argues that the ALJ failed to adequately account for limitations in his ability to make simple work-related decisions, respond appropriately to changes in a routine work setting, and respond appropriately to supervision, co-workers and work

---

[11] This list includes the ability to: remember work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; maintain attention for extended periods of 2-hour segments; maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being (unduly) distracted by them; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without (unduly) distracting them or exhibiting behavioral extremes; respond appropriately to changes in a (routine) work setting; and be aware of normal hazards and take appropriate precautions. *See* POMS DI25020.010B3. https://secure.ssa.gov/poms.nsf/lnx/0425020010.

situations. (Docket Entry 9 at 8-9.) To make this argument, Plaintiff relies on the medical opinion of Dr. Ward. (Tr. 397-98.) However, the undersigned has assessed the ALJ's analysis of Dr. Ward's medical opinion above and found it to be supported by substantial evidence. Consequently, Plaintiff's argument that the ALJ had no basis for rejecting Dr. Ward's opinion that he could not meet several demands of simple work is without merit.

### C. The Appeals Council Did Not Err in Declining Further Review of This Action.

Next, Plaintiff contends that the Appeals Council erred by declining to review the ALJ's unfavorable decision, especially in light of additional evidence provided by Plaintiff in the form of a report by Stephen D. Carpenter, a certified rehabilitation counselor. (Docket Entry 9 at 10 referencing Tr. 441-45.) Dr. Carpenter's five page report reanalyzed the evidence of record and concluded that Plaintiff could not work on a sustained basis and was therefore unemployable due to a combination of physical and mental impairments during the period in question. (*Id.* at 445.)

In declining further review, the Appeals Council stated that it:

> has conducted a review of the attachments to [Plaintiff's] letter of exceptions, and finds that this report is after the period at issue, and not relevant or based on reports already of record and previously considered by the [ALJ] in the hearing decision. From our review of the record, the [ALJ]'s decision is supported by substantial evidence. Accordingly, there is no basis for changing the hearing decision or for the Appeals Council to assume jurisdiction in this case.

(*Id.* at 430.)

In support of his contention, Plaintiff cites 20 C.F.R. § 404.970(b), which provides:

> [I]f new and material evidence is submitted, the Appeals Council

17

shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b).

Defendant cites a number of cases for the proposition that the Appeals Council's denial of further review is warranted if the new evidence is unlikely to alter the ALJ's decision. *See Bishop v. Barnhart*, 78 Fed. Appx. 265, 269 (4th Cir. 2003) ("The Appeals Council must consider evidence submitted with a request for review if the evidence is new, material, and relates to the period on or before the date of the ALJ's decision. . . . [T]he additional information is not material because it would not have changed the ALJ's decision."); *McAbee v. Halter*, 21 Fed. Appx. 126, 129 (4th Cir. 2001) (concluding that "new evidence must . . . be sufficient, in light of the record, to alter the ALJ's determination"); *Jones v. U.S. Dept. Health & Human Services*, 1998 WL 85408, at *2 (4th Cir. Feb. 27, 1998) (unpublished) ("Nor did the evidence submitted to the Appeals Council change the equation. . . . [The new evidence] would not so substantially alter the weight of the evidence as to indicate that a reasonable mind could not find the evidence adequate to support a finding by the ALJ of no disability. Nor does [additional new evidence] so change the record as to indicate that the ALJ's decision lacked sufficient support."). The undersigned has reviewed the entire record, including Mr. Carpenter's report, which is essentially an assessment of the already existing record. The

18

undersigned is not convinced that there is a reasonable probability that Dr. Carpenter's report is sufficient to alter the outcome of the ALJ's decision. Consequently, the undersigned concludes that the Appeals Council did not err in declining further review.

### D. Any Failure of the ALJ to Describe Plaintiff's Sit/Stand Limitation with Greater Clarity Is Harmless.

Plaintiff points out that, in pertinent part, SSR 83-12 provides:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)

> There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.

SSR 83-12, *Capability to Do Other Work—The Medical Vocational Rules as a Framework for Evaluating Exertional Limitations within a Range of Work or Between Ranges of Work.*

19

Plaintiff further notes that SSR 96-9p, *Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*, provides that "The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p. Plaintiff contends that these regulations require remand here because the ALJ failed to be specific about the details of the sit/stand option in Plaintiff's RFC and consequently failed to be specific in his hypothetical question to the VE regarding a sit/stand limitation. (Docket Entry 9 at 14.) Because it is not known what frequency of the sit/stand option the VE used when responding to the ALJ's hypothetical question, Plaintiff contends, the ALJ failed to meet his burden at step five. (*Id.*)

The undersigned is not convinced. First, SSRs 83–12 and 96–9p do not seem relevant in the manner Plaintiff suggests. SSR 83–12 states: "In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base." SSR 83–12. Here, the ALJ complied with this regulation by obtaining the testimony of a VE during the hearing. (Tr. 641-45). The VE testified about a number of positions a claimant with limitations like those of the Plaintiff could perform[12] and stated further that "all of the jobs . . . described have an ability to change from sit to stand." (*Id.* at 644.) As for SSR 96-9p, by its own terms, it expressly addresses claimants capable of performing only *sedentary* work. *See* SSR 96-9p, *Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of* Sedentary *Work*. Yet, the ALJ in the present case

---

[12] Specifically, the VE mentioned ticket taker (DOT No. 344.667-010); small parts assembler (DOT No. 706.684-022); laundry and dry cleaning sorter (DOT No. 361.687-014); nut sorter (DOT No. 521.687-086); dowel inspector (DOT No. 669.687-014); and bead inspector (DOT No. 725.687-010). (Tr. 641-45.)

determined that Plaintiff was capable of a range of *light* work, albeit with additional nonexertional limitations. *Id.* at 457. Thus, SSR 96-9p is on its face inapplicable here.

Second, the more persuasive case law on this issue concludes that where an ALJ fails to specify in a hypothetical the frequency of alteration in a sit/stand option, the reasonable implication is that the claimant should be able to sit or stand at her own volition. *See, e.g.,* *Williams v. Barnhart*, 140 Fed. App'x 932, 936-37 (11th Cir. 2005); *Wright v. Astrue*, No. 1:09CV0003, 2012 WL 182167, at * 8 (M.D.N.C. Jan. 23, 2012) (unpublished); *Vallejo v. Astrue*, No. 3:10cv445, 2011 WL 4595259, at *8–10 (W.D.N.C. Aug 4, 2011) (unpublished); *Smith v. Astrue*, 2010 WL 3749209, at * 19 n.26 (N.D. Fla. Aug. 25, 2010) (unpublished). Consequently, though the ALJ here failed to specify in a hypothetical to the VE the frequency of alteration in the hypothetical sit/stand option, the undersigned concludes that it was implicit in the hypothetical that the claimant should be able to sit or stand at her own volition. Thus, the ALJ's hypothetical to the VE was not so vague as to be fatally defective.

Third, the cases Plaintiff cites in support of this argument are inapposite. The facts of *Armer v. Apfel* involve unskilled *sedentary* work with a sit/stand limitation, which falls within the parameters of SSR 96–9p, unlike this case, which does not. Nos. 99-7128, 98-CV-424-S, 2000 WL 743680, *3-4 (10th Cir. June 9, 2000) (unpublished). Plaintiff's other authority, *Vail v. Barnhart*, is not a reversal based solely upon the ALJ's failure to specify a frequency for the claimant's sit/stand limitation, but a reversal upon other errors as well. No. 02–5061, 2003 WL 22810457, at *6 (10th Cir. Nov. 26, 2003) (unpublished). Thus, the present case is distinguishable. To sum, any failure to describe Plaintiff's sit/stand limitation with greater

21

clarity is at most harmless error.[13]

### E. The ALJ's Decision Is Carefully Set Forth and Draws Reasonable Inferences from the Administrative Record.

Last, Plaintiff argues that the ALJ's decision violated SSR 86-8 because it was based upon "presumptions, speculations and suppositions" instead of evidence. (Docket Entry 9 at 14.) Plaintiff faults the ALJ for giving little weight to Dr. Ward's opinion and for further rejecting the medical opinions of additional unnamed "experts in the area of psychiatry that do not support the conclusion he wanted to reach." *Id.*

In support of this contention, Plaintiff cites to SSR 86-8, which provides that:

> The disability determination or hearing decision must be set forth carefully. The rationale must reflect the sequential evaluation process; describe the weight attributed to the pertinent medical, nonmedical and vocational factors in the case; and reconcile any significant inconsistencies. *Reasonable inferences may be drawn, but presumptions, speculations and suppositions should not be substituted for evidence.*

SSR 86-8, *The Sequential Evaluation Process* (emphasis added).

This argument lacks merit. As Defendant correctly points out (Docket Entry 12 at 5), the ALJ's decision indicates that he relied primarily on the opinion of Dr. Robert Ballentyne, the psychologist and medical expert who testified at Plaintiff's hearing before the ALJ. (Tr. 464, 630-31.) The ALJ also placed significant weight on the reports and opinions of those psychiatrists and therapists treating Plaintiff while he was incarcerated through April 2000, including the psychiatrist who completed his discharge summary in January of 2000 (*id.* at

---

[13] The undersigned also notes that Plaintiff was represented by counsel at the hearing. Counsel examined the VE on other matters, but did not pursue the issue of Plaintiff's sit/stand option further. (Tr. 644-49.)

462-63, 203-06), as well as the report and opinion of Dr. Noia, a psychologist that evaluated Plaintiff in May 2000 (*id.* at 463, 223-226.) The ALJ was entitled to rely on this evidence. Moreover, the ALJ also considered Dr. Ward's medical opinion at considerable length and gave a number of reasons (discussed above) for partially discounting this opinion.

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for a Judgment Reversing or Modifying the Decision of the Commissioner of Social Security, or Remanding the Cause for a Rehearing (Docket Entry 8) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) be **GRANTED** and the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
July 24, 2013

23